# In the United States Court of Federal Claims

No. 25-143L
(Filed: September 30, 2026)
**FOR PUBLICATION**

| | |
|---|---|
| JEFFREY ESSMANN, *et al.*, | * |
| Plaintiffs, | * |
| v. | * |
| THE UNITED STATES, | * |
| Defendant. | * |

*Timothy M. Bechtold*, Bechtold Law Firm, P.L.L.C., Missoula, MT.

*Young A. Kang*, Trial Attorney, Natural Resources Section, Environment & Natural Resources Division, U.S. Department of Justice, Washington, D.C. Also on the briefs was *Adam R.F. Gustafson*, Principal Deputy Assistant Attorney General, Environment & Natural Resources Division, U.S. Department of Justice.

## OPINION AND ORDER

Plaintiffs allege that by flooding their land with water released from a dam system, the government has taken a flowage easement without just compensation. *See* Compl. (ECF 1). Defendant's motion to dismiss is fully briefed. *See* Def.'s Mot. to Dismiss (EFC 9) ("Def.'s Mot."); Pls.' Resp. (ECF 10); Def.'s Reply (ECF 11). After I heard oral argument, *see* Oral Arg. Tr. (ECF 19) ("Tr."), Plaintiffs moved for leave to file an amended complaint pursuant to RCFC 15(a)(2). *See* Pls.' Mot. for Leave (ECF 13); Am. Compl. (ECF 13-1). Defendant opposed the motion for leave. *See* Def.'s Resp. (ECF 16); *see also* Pls.' Reply (ECF 17).

This Court "should freely give leave" to amend a pleading "when justice so requires." RCFC 15(a)(2). Because Plaintiffs' amended complaint states a claim upon which relief can be granted, Plaintiffs' motion for leave is **GRANTED**, and Defendant's motion to dismiss is **DENIED**.

## BACKGROUND

Plaintiffs own farmland along the Bighorn River downstream of the Yellowtail Dam and the Yellowtail Afterbay Dam (collectively, the "Dam") in Montana. Compl.

¶¶ 9, 37; Am. Compl. ¶¶ 9, 35.[1] The Dam — which is jointly managed by the U.S. Army Corps of Engineers and the Bureau of Reclamation, *see* Compl. ¶¶ 1, 41; Am. Compl. ¶¶ 1, 39 — was constructed to generate hydroelectric power and provide flood control to incentivize downstream agricultural development. Compl. ¶¶ 35–37, 39, 42–44; Am. Compl. ¶¶ 33–35, 37, 40–42. Plaintiffs allege the government's commitment to flood control induced them to purchase their downstream properties. Compl. ¶ 44; Am. Compl. ¶ 42.

In June 2023, the government "deliberately caused a significant amount of water to be rapidly released" from the Dam. Compl. ¶ 47; Am. Compl. ¶ 45. Plaintiffs allege that, as a direct and foreseeable result of the release of water, their properties flooded. *See* Compl. ¶¶ 3, 10–25, 47–48; Am. Compl. ¶¶ 3, 10–23, 45–46. They say their properties "were submerged for a substantial period of time," Am. Compl. ¶ 53, and that soil was washed away, in some cases permanently destroying crops and fixtures. *Id.* ¶¶ 10–23, 54. Plaintiffs say their properties can no longer be used in the same way. *See id.*; Compl. ¶¶ 10–25. Finally, Plaintiffs allege that the flooding caused the Bighorn River to change its course, and that the river now runs over portions of their property that previously had been arable land. *See* Am. Compl. ¶¶ 10–23, 54.

According to Plaintiffs, those events are equivalent to the government taking a flowage easement, and the Takings Clause of the Fifth Amendment requires just compensation. Compl. ¶¶ 56–59; Am. Compl. ¶¶ 48, 54–55, 58–59.

The government moved to dismiss for failure to state a claim. At oral argument, Plaintiffs offered to file an amended complaint pleading additional facts. Tr. at 24. Plaintiffs moved for leave to amend. The government opposed, arguing that the amended complaint "suffers from the same defects raised in the United States' motion to dismiss." Def.'s Resp. at 2.

## DISCUSSION

### I. Standard of Review

Defendant has moved to dismiss for failure to state a claim under RCFC 12(b)(6). This Court's pleading rules require "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2). That means that to survive a Rule 12(b)(6) motion, a complaint must contain sufficient facts, accepted as true, to render the claim plausible. *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 39 (Fed. Cir. 2024); *see also Iqbal*, 556 U.S. at 678. The pleaded facts must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct

[1] Plaintiffs' well-pleaded facts are taken as true when evaluating the motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

If a party seeks to amend a pleading, "[t]he court should freely give leave when justice so requires." RCFC 15(a)(2). The Supreme Court encourages courts to construe the rule broadly, but if the amendment would be futile, a court can fairly deny it. *See, e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962) (applying the Federal Rules of Civil Procedure). An amendment is futile when the amended complaint does not state a claim upon which relief can be granted. *See, e.g.*, *Campbell v. United States*, 137 Fed. Cl. 54, 57 (2018); *see also Dixon v. United States*, 158 Fed. Cl. 80, 85 (2022) (citing *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1354–55 (Fed. Cir. 2006)).

## II. Analysis

### A. Jurisdiction

This Court has subject-matter jurisdiction over Fifth Amendment takings claims, *Scarpaci v. United States*, 178 Fed. Cl. 536, 544 n.4 (2025), which can include government induced flooding. *See Quebedeaux v. United States*, 112 Fed. Cl. 317, 321 (2013) ("[G]overnment-induced flooding can constitute a taking[]."). Plaintiffs, as property owners affected by flooding, have standing to seek damages. Am. Compl. ¶¶ 9–23. *See*, *e.g.*, *Palazzolo v. Rhode Island*, 533 U.S. 606, 628 (2001); *Reoforce, Inc. v. United States*, 853 F.3d 1249, 1263 (Fed. Cir. 2017).

Plaintiffs' action is also timely. Under 28 U.S.C. § 2501, a plaintiff has six years from the time of accrual to file a claim. A takings claim accrues "when the taking action occurs." *Navajo Nation v. United States*, 631 F.3d 1268, 1273–74 (Fed. Cir. 2011). Here, the flooding took place in 2023, Compl. ¶ 47; Am. Compl. ¶ 45, and Plaintiffs sued in 2025. Thus, Plaintiffs' action is well within the statute of limitations.

### B. Merits

Because the government argues that leave to amend should be denied as futile, citing the arguments raised in its motion to dismiss, Def.'s Resp. at 3, the motion to dismiss and the motion for leave to amend merge into a single question: whether Plaintiffs' proposed amended complaint states a claim. I conclude that it does.

When government action leads to temporary flooding of property, relief in this Court depends on whether the government has taken the property or merely trespassed. *See Ideker Farms, Inc. v. United States*, 71 F.4th 964, 978 (Fed. Cir. 2023); *see also Northwest La. Fish & Game Preserve Com'n v. United States*, 79 Fed. Cl. 400, 406 (2007); *Lewis v. United States*, 175 Fed. Cl. 507, 512 (2025); *Noll v. United States*,

No. 24-5150, 2024 WL 3517627, at *3 (Fed. Cir. July 24, 2024). This Court distinguishes true takings of property from other temporary floods using the balancing test provided by the Supreme Court in *Arkansas Game & Fish Commission v. United States*, 568 U.S. 23, 38–39 (2012) ("*Arkansas Game*"); *see Ideker Farms, Inc.*, 71 F.4th at 978. The relevant factors include — as restated helpfully by a judge of this Court — "(1) the time and duration of the alleged invasion; (2) 'the degree to which the invasion is intended or is the foreseeable result of authorized government action;' (3) the character of the land at issue and the 'owner's reasonable investment-backed expectations regarding the land's use;' and (4) the severity of the interference." *In re Downstream Addicks & Barker (Texas) Flood-Control Reservoirs*, 181 Fed. Cl. 225, 246 (2026) (citing *Arkansas Game*, 568 U.S. at 38–39) (citations and quotations omitted).

Those considerations are fact-dependent, and thus hard to resolve against property owners at the pleading stage. The government argues, though, that Plaintiffs' factual pleadings are insufficient as a matter of law. Although Plaintiffs' factual pleadings are thin, they provide just enough to meet the pleading standard.

Defendant's main argument is that Plaintiffs have failed to allege that government-induced flooding of their properties will recur in the future. Def.'s Mot. at 3–7; Def.'s Reply at 2–3.[2] But no authority requires that temporary government-induced flooding must recur in order to amount to a taking. *Arkansas Game* mentioned no such requirement. On the contrary: The Supreme Court held that "government-induced flooding temporary in duration gains no automatic exemption from Takings Clause inspection." 568 U.S. at 38. That is not consistent with a categorical requirement for future recurrence of temporary flooding.

The procedural history of *Arkansas Game* confirms the point. The Federal Circuit dismissed the claim in that case because the plaintiff had failed to show that the temporary flooding was either "permanent or inevitably recurring." *See* 568 U.S. at 26–27. The Supreme Court, though, remanded for application of its balancing test. *Arkansas Game*, 568 U.S. at 38–40.[3] If recurrence were required, there would have been no need for further proceedings. The Supreme Court's decision thus establishes that temporary flooding can be a taking — depending on consideration of the relevant factors — even when it will not recur.

[2] Defendant argues in passing that Plaintiffs fail RCFC 9(i) because they do not specify whether the taken flowage easement was permanent or temporary. Def.'s Reply at 5; Def.'s Resp. at 1 n.1. I consider Plaintiffs' pleading adequate in that respect.

[3] The government conceded as much at argument. Tr. at 5, 9.

So does more recent authority from the Federal Circuit. In *Ideker Farms*, the Circuit explained that indefinitely recurring temporary flooding is a categorical taking to which the *Arkansas Game* balancing test does not apply at all. *Ideker Farms, Inc.*, 71 F.4th at 981 ("*Arkansas Game*[]'s multi-factor test does not apply to permanently recurring flooding. Instead, such flooding that foreseeably or intentionally results from government action is a categorical physical taking."); *see also Arkansas Game*, 568 U.S. at 31–32 (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982)) (noting bright-line rule that permanent physical occupation of property authorized by government is a taking). That means *Arkansas Game* balancing is reserved for temporary flooding that will *not* recur. *Ideker Farms, Inc.*, 71 F.4th at 981 ("To be clear, we do not alter or amend our trespass-versus-takings jurisprudence or question the applicability of *Arkansas Game*[] to temporary floodings."). Given that the Supreme Court has created a balancing test for deciding whether temporary non-recurring floods amount to a taking or not, it cannot be that future recurrence is required.

As a fallback, Defendant suggests that if *future* recurrence is not necessary to establish a taking, then *past* recurrence is. Tr. at 9. But that theory comes from thin air too. The *Arkansas Game* Court never said past recurrence was required any more than future recurrence. Instead, it described its balancing test as aligning the takings analysis in temporary flooding cases with other temporary occupations, many of which were one-off seizures in wartime. *See* 568 U.S. at 32–33 (citing *United States v. Pewee Coal Co. Inc.*, 341 U.S. 114 (1951), *Kimball Laundry Co. v. United States*, 338 U.S. 1 (1949), and *United States v. General Motors Corp.*, 323 U.S. 373 (1945)). If one-time temporary occupations of coal mines, laundries, and warehouses can be takings, *see id.*, the argument that government-induced *flooding* has to be recurrent is just special pleading.[4] Decisions of this Court, the Federal Circuit, and the Court of Claims accordingly show that "conduct that purposely floods property for an extended period of time can give rise to a temporary taking[] — even if the flooding occurred only one time." *Quebedeaux*, 112 Fed. Cl. at 324 (collecting cases).

Instead, the number of past flooding events is better treated as one of the many factual considerations that feed into the *Arkansas Game* balancing process. *See Quebedeaux*, 112 Fed. Cl. at 323 ("[T]he flooding cases seem to focus on periodicity only as one indication as to whether defendant has appropriated an interest for itself in the affected property."). The usual rule of takings law is that a few governmental

[4] Special pleading is a logical fallacy wherein one recognizes that a "rule, principle, or law applies to all people alike" but "wishes to make himself or herself or another an exception to it" while "no evidence is provided for making that exception." T. Edward Damer, Attacking Faulty Reasoning 171 (6th ed. 2009).

intrusions seldom add up to the equivalent of a government occupation. They are more likely to be considered "[i]solated physical invasions, not undertaken pursuant to a granted right of access," which "are properly assessed as individual torts rather than appropriations of a property right." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 159 (2021). Consistent with that generalization, a small number of floods, "by themselves," suggest a government trespass as opposed to a taking. *National By-Products, Inc. v. United States*, 405 F.2d 1256, 1273 (Ct. Cl. 1969); *Ideker Farms, Inc.*, 71 F.4th at 980; *cf. Penna v. United States*, 153 Fed. Cl. 6, 21 (2021) ("The reason for the application of an ad hoc, multifactor test in flooding cases is that … '[n]ot every physical invasion is a taking.'") (quoting *Loretto*, 458 U.S. at 435 n.12)).

But that does not mean that a single flood *cannot*, as a matter of law, be considered a taking. It simply means that a few isolated, temporary floods are less likely to satisfy the *Arkansas Game* balancing test, which — again — looks to "the time and duration of the alleged invasion" and "the severity of the interference." *In re Downstream Addicks*, 181 Fed. Cl. at 246 (citing *Arkansas Game*, 568 U.S. at 38–39) (citations and quotations omitted). A single event could in theory satisfy that test, depending on the facts. *Quebedeaux*, 112 Fed. Cl. at 324. Defendant ultimately conceded as much. Tr. 17–19. The takings question thus comes down to the balancing test, not artificial bright lines based on the number of flooding events.

Defendant also contends that Plaintiffs' pleadings only speak to permanent *damage* to their property, not a permanent *occupation*. The fact that damage remains — according to Defendant — is insufficient to show the government took a flowage easement. Def.'s Reply at 3; Def.'s Resp. at 1. Defendant relies on *United States v. Cress*, which held that "it is the character of the invasion, not the amount of damage resulting from it … that determines the question whether it is a taking." *See* 243 U.S. 316, 328 (1917). But even if permanent damage alone is insufficient to establish a taking, the damages may be relevant to the *Arkansas Game* balancing test to the extent they speak to the severity of the interference. *See Arkansas Game*, 568 U.S. at 39 ("Severity of the interference figures in the calculus[.]"). Plaintiffs' allegations should be understood in that sense.

And that simply brings us to where we ought to have been all along — application of the *Arkansas Game* balancing test to Plaintiffs' pleadings. Several aspects of Plaintiffs' pleadings imply not only alleged damage, but an occupation. Plaintiffs allege that they own farmland, Am. Compl. ¶ 9, which was submerged "for a substantial period of time" and can no longer be used in the same way, *id.* ¶¶ 53–54, as a direct and foreseeable result of Defendant's decision to release water in June 2023, *id.* ¶ 45. They also allege that they developed their land in reliance on Defendant's past flood-control policies. *Id.* ¶ 42. Those facts line up with the *Arkansas*

*Game* test, which looks to the character of the allegedly taken property, the property owner's investment-backed expectations, and the foreseeability, duration, and severity of the invasion after the government's action. *Arkansas Game*, 568 U.S. at 38–39. Plaintiffs do not expressly allege that the government has deliberately flooded their land before or will do so again. But given that this Court "must draw all reasonable inferences in favor of the claimant," *Alkire v. United States*, 158 Fed. Cl. 380, 389 (2022) (quoting *Call Henry, Inc. v. United States*, 855 F.3d 1348, 1354 (Fed. Cir. 2017) (itself citing *Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014))), it is at least minimally plausible that Plaintiffs could prove a taking based on a one-time temporary flood.

Other aspects of the pleadings suggest a taking as well. Plaintiffs allege that because of the flooding, the river changed course, and parts of their property that were usable are now permanently submerged. Am. Compl. ¶¶ 53–54. That could suggest a permanent occupation, not just a temporary one. *See Owen v. United States*, 851 F.2d 1404, 1411 (Fed. Cir. 1988); *see also Pumpelly v. Green Bay & Miss. Canal Co.*, 80 U.S. 166, 177, 181 (1871) (finding a taking where dam construction created a lake that permanently submerged plaintiff's land).

Because one-time flooding can leave the government with liability under the Takings Clause, and because Plaintiffs' proposed amended complaint contains facts sufficient to plausibly infer that the government is liable here, amendment is not futile, and the government's RCFC 12(b)(6) arguments fail.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF 9) is **DENIED** and Plaintiffs' Motion for Leave to Amend their Complaint (ECF 13) is **GRANTED**. Plaintiffs are **ORDERED** to file their Amended Complaint no later than **October 2, 2026**.

**IT IS SO ORDERED**.

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge